IN THE UNITED STATES DISTRICT COURT

FOR THE DISTIRCT OF COLUMBIA

SANJEEV MALHOTRA, *pro-se*

Plaintiff

VS.                             Civil Action No.:      08-00470 RBW

GREGORY M. RYAN and RENU K. RYAN

and/or their Agents/Assignees

AND Dept of Social Services, Frederick Co., MD

Defendant

## SUPPLEMENT to PLAINTIFF'S MEMORANDUM AND POINTS OF AUTHORITY

## TO SUPPORT THE TEMPORARY RESTRAINING ORDER

Now comes, Sanjeev Malhotra, *pro-se* Plaintiff, and files this Supplement to the Plaintiff's Memorandum and Points of Authority to Support the Temporary Restraining Order against the enforcement of child support order of 21st November 2005 of Circuit Court for Maryland in Frederick County, Maryland upon misrepresentation by the Defendant to various agencies, and the subsequent earnings withholding order (EWO) based upon the said erroneous child support order, and that the Plaintiff's Memorandum and Points of Authority to Support the TRO was filed two business days ago on March 19, 2008 and in support thereof, states as follows:

1

1. That the November 21st, 2005 Order on child support matters for year 2005 docketed by the Circuit Court for Maryland was Erroneously signed after a long wait of over seven-and-a-half months from the open hearing held on March 31, 2005 and this Order was signed when these matters were already on Appeal in Annapolis at the Court Of Special Appeals (COSA) ---Case No. 0645, September 2005 Term--- and thereby **"the Circuit Court arrogated to itself a power that not even the Court of Special Appeals had."**, per *Carroll County Commissioners v. Carroll Craft Retail, Inc., 384 Md. 23; 862 A.2d, 404;* and additionally, it states that **"once the appeal was pending, the Circuit Court was certainly prohibited from exercising its jurisdiction in a way that would affect the subject matter of the appeal or appellate proceeding"** (*ibidem*); and that the Circuit Court was *Fully Cognizant* of the Fact that this case was on APPEAL to the Honorable COSA in November 2005 based on Hot Pink Labels ---still on files in late May 2007--- attached to the file folders of this case (00-1838-cv) in the Circuit Court.

2. That the Circuit Court for Maryland did NOT have jurisdiction in the child support matter and some other related matters on May 3rd, 2007 again due to pending Appeal at COSA in Annapolis ---Case No. 0553, September 2006 Term--- when it arbitrarily and erroneously passed an Earnings Withholding Order (EWO) despite the Circuit Court Not having even the files of the pleadings on these financial matters in its possession, and that **"once an appeal is pending, the Circuit Court is prohibited from exercising its jurisdiction in a way that would affect the subject matter of the appeal."**, per *Ridgeway v. Ridgeway, 171 Md. App. 373; 910 A.2d 503;* and additionally, that the said EWO was based on the Erroneous November 21, 2005 child support order --- thereby compounding the Errors against the *pro-se* Plaintiff, when the Circuit Court was *Fully Cognizant* of the Fact that this case was on APPEAL to the Honorable COSA based on Hot Pink Labels ---still on files in late May 2007--- attached to the file folders of this case (00-1838-cv) in the Circuit Court

3. That **"when construing court rules, a court must bear in mind that they are precise rubrics established to promote the orderly and efficient administration of justice and are to be strictly followed."**, per *Early v. Early, 338 Md. 639; 659 A.2d 1334*);   and that the docketing of **the Erroneous November 21st Order on Child Support matters did NOT follow these "precise rubrics" thereby Denying the *pro-se* Plaintiff his rights by NOT promoting the orderly and efficient administration of justice to the *pro-se* Plaintiff;**   and further that in the hearing held on May 3rd, 2007 based on Misrepresentations and Improper Service to the *pro-se* Plaintiff, the Defendant's Agent, Mr. Neal Mieselman, Misrepresented to the Circuit Court in the Hearing on May 3rd, 2007 that he had received an "Order yesterday" (i.e.,on May 2, 2007, one day before the May 3rd Hearing date) from COSA in Annapolis when NO such Mandate/ Order had been issued by the Honorable COSA on or about April 30, 2007 (Monday) for Mr. Neal Mieselman to receive it on May 2nd, 2007 --- the day before the hearing on May 3rd, 2007.

4. That the highest court, Court of Appeals for the State of Maryland, has clearly stated that **such erroneous rulings are void or voidable on appeal** as it clarified that in **"regard to rulings made in violation of the statutory restrictions on a court's authority or discretion as inappropriate exercises of jurisdiction, voidable on appeal, rather than as inherently void excess of fundamental jurisdiction itself."**, per *Downes v. Downes, 388 Md. 561; 880 A.2d 343*, citations omitted.

5. That the pro-se Plaintiff had filed a STAY OF Nov. 21st, 2005 ORDER Motion on December 21, 2005 to the Circuit Court (Docket No. 357000) which was still pending before the Court on May 3rd, 2007 and had NOT been ruled upon;   and that the Circuit Court abused its discretion in moving on Defendant's Contempt Motion of April 2, 2007 when that had NOT been served upon the *pro-se* Plaintiff as filed and stated in their Certificate of Service;   and while the *pro-se* Plaintiff was NOT served until April 9, 2007 by facsimile, for argument sake, and thus, the aforesaid Defendant's Motion for Contempt was NOT ready to be heard on May 3rd, 2007 as the *pro-se* Plaintiff still had time to file its reply until May 9th, 2007.

3

6. That **it is fundamental** that jurisdiction is the authority by which courts take cognizance of and decide cases, and of the three elements[1] that are necessary to the validity of a court order, **Subject Matter jurisdiction is essential** (emphasis added); and since Subject Matter jurisdiction concerns the competency of the court to determine the particular matter, it cannot be waived by the parties or conferred upon the court by their consent and it may be challenged at any time in the course of the proceedings.

7. **That "if a decree is utterly void it may be attacked anywhere, at any time, by any person affected by it,"** per *Executors of Nelson H. Fooks v. Ghingher, 172 Md. 612; 192 A. 782*; and additionally, it further states that **"a judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal affect no judgment at all, conferring no right and affording no justification. Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers.",** (*ibidem*); and that the *pro-se* Plaintiff firmly believes now that the Circuit Court's November 21st, 2005 Order on Child Support matters meets all of the above description of an utterly void decree.

8. That, in the State of Maryland, the **"use of the child support guidelines became mandatory, not merely permissible, on April 10, 1990 when Senate Bill 633, which amended various sections of the Family Law Article including §12-204 was approved.";** and that **"the adoption of the child support guidelines was intended to restrict the equitable discretion of the trial court and produce an award of support that is grounded in specific**

---

[1] Per O'Neal v. Ogle (In re A.N.O.), 2004 OK 33, 2004 Okla., that the three elements necessary to the validity of a court order are the jurisdiction of the person, jurisdiction of the subject matter and the power of the court to decide the particular matter and render the particular judgment at issue.

4

<u>**descriptive and numeric criteria.**</u>", *per Reuter v. Reuter, 102 Md. App. 212; 649 A.2d 24*; and that the Circuit Court's Order docketed on November 21, 2005 in Child Support matters does NOT follow the mandatory child support guidelines, which had been pointed out many times to the lexicographer of the original Draft Order (children's attorney) as well as to the Circuit Court many times prior to that Erroneous Order being signed without consideration of a different Draft Order prepared by the *pro-se* Plaintiff and timely filed to the Circuit Court many times ---since that Order prepared by the *pro-se* Plaintiff was away in Annapolis in the files sent there on the pending Appeal matters, and thus, the signing of the November 21st, 2005 Order by the Circuit Court and the May 2007 EWO based on that Erroneous November 21, 2005 Order Denied to the *pro-se* Plaintiff the use of specific and numeric criteria established therein in the Child Support Guidelines Form Worksheets.

9. That as clearly stated by the Court Of Appeals (COA) of Maryland (in *Wills v. Jones 340 Md. 480; 667 A. 2d 331*) and as shown on the third (3rd) page of that decision by counting cover page of the COA decision as the first page:
"*The child support guidelines codified at §§ 12-201 to 12-204 of the Family Law Article provide the method of analysis used to determine the amount of child support awarded in each case. Section 12-202 (a) (2) <u>**makes the use of these guidelines mandatory**</u> unless the result would be "unjust or inappropriate in a particular case." <u>When a court departs from the child support guidelines</u>, <u>**it must make a written finding stating the amount of support that would have been ordered under the guidelines**</u>, <u>how the court's order varies from the guidelines</u>, and <u>**how this variance serves the best interests of the child**</u>.*" (emphasis added)   It further states that:
> "*In general, the child support guidelines "establish child support obligations based on estimates of the percentages of income that parents in an intact household typically spend on their children.*"

"*In <u>Voishan</u>, we discussed in detail the process of using the guidelines to fix a parent's support obligation.*"

"*For the present case, <u>**we reiterate that the obligation is calculated by determining each parent's monthly income**</u>, using the table at §12-204(e) to*

5

*determine the parents' combined monthly support obligation, <u>**and dividing this obligation between the two parents in proportion to their relative incomes**</u>.*"
(emphasis added)

"*Because the parents' income levels determine the amount of support that a child receives, **it is imperative to accurately assess the parent's respective incomes.**"*

"<u>*It is equally imperative that parents be prevented from avoiding their support obligations by purposefully reducing their income.*</u>"

and that most of the above factors were NOT followed in drafting of the erroneous order finally signed by the Court and docketed on November 21st, 2005 as an *ex-parte* Order after a long wait of seven-and-a-half months when it was only applicable for year 2005, and then applying this erroneous November 21, 2005 Order to establish an EWO on May 3, 2007 for all of year 2006 and part of 2007 without asking the Defendant Renu Khosla Ryan for her new "gross income" for years 2005 and to be applied for years 2006 and 2007, respectively; and that, for example, but not limited to, *per §12-203*, NO "standardized worksheet forms" were attached to the November 21st, 2005 Order NOR the Defendant's "gross income was verified" *(ibidem)* by either the Court or the children's attorney at the March 31st, 2005 or May 3, 2007 hearings, when she had willfully misrepresented her continued employment with Holy Cross Hospital on March 31st, 2005 when it had been "terminated" on March 4th, 2005 --- to confirm, please see letter of April 19, 2007 from Ms. Karen Baxter, Director of Human Resources Operations at Holy Cross Hospital in Silver Spring, Maryland.

10. That based on information and belief, New Evidence through Discovery will prove beyond doubt that the Defendant had been employed at Georgetown University Hospital in Washington, DC atleast in years 2005, 2006 and 2007 after her "employment was terminated" at Holy Cross Hospital on March 4, 2005; and <u>that the Defendant Renu Khosla Ryan has Willfully and with Purpose DECEIVED the Courts in Deliberately Playing Dumb by NEITHER Informing the Court or the *pro-se* Plaintiff Malhotra of the termination of her employment with Holy Cross Hospital and her New Employer (Georgetown University Hospital) and Salary Level NOR has she PROVIDED copies of her W-2 statements for years 2005</u>

6

and 2006 for any recalculation of child support to be done for years 2006 and 2007, respectively;   and this can be clearly seen from the Defendant's own Sworn Statement filed to the Circuit Court on November 13th, 2006 in her 2-page pleading stating therein, **"the Plaintiff (therein, Ms. Renu Khosla) strongly believes that it is unnecessary and a waste of time and effort to exchange W-2 income statements or any other financial documents for the purpose of recalculating subsequent child support amounts;"** (Docket No. 483000);   and yet Ms. Renu Khosla (Defendant herein) wanted the *pro-se* Plaintiff imprisoned for an erroneous Child Support Order based on her Willful Misrepresentations to the Court and her DISINGENUOUS Behavior in this matter;   and that pursuant to the Revisory Powers of Maryland Rules 2-535 and the New Evidence discovered by the *pro-se* Plaintiff, the Honorable US Court can revoke the erroneous November 21, 2005 child support order, and the follow-up contempt decision and the EWO against the *pro-se* Plaintiff based on that erroneous November 21, 2005 order, or Stay the enforcement of those orders, or Order a New Trial in this US Court by allowing the *pro-se* Plaintiff to file a proper reply to the Contempt Motion of April 2, 2007 that was NOT properly served by Defendant Renu Khosla Ryan and her Agent and hence it was NOT ripe for a hearing on May 3rd, 2007.

11. That the *pro-se* Plaintiff is entitled to a New Trial by this Honorable US Court as described in *pro-se* Plaintiff's pleadings already filed and as defined in *Holden v. Blevins, 2003 Md. App. Lexis 162, 154 Md. App. 1, 837 A.2d 1053* that states: **"Party is entitled to a new trial on the basis of newly discovered evidence when the court is persuaded that (1) the evidence has been discovered since the trial, i.e., the evidence is "newly discovered"; (2) the moving party was diligent in attempting to discover the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is "material" to the issues involved; and (5) the evidence is of such a nature that a different outcome would probably result if it was considered."**, and that the *pro-se* Plaintiff has met the five conditions above based on the pleadings submitted to

7

I affirm under the laws of the United States of America that the statements made herein are true to the best of my knowledge and belief.

March 23, 2008

Respectfully submitted by:    _Sanjeev Malhotra_

SANJEEV MALHOTRA

3484 Augusta Drive

IJAMSVILLE, MD. 21754-9027

Home Phone: (301) 865-3474


## CERTIFICATE OF SERVICE

That on this 24th day of March 2008, I have included the aforesaid Supplement to the Plaintiff's Memorandum and Points of Authority to Support the Temporary Restraining Order with the already issued Summons to be served upon the Defendant within 120 days of the simultaneous filing of the actual Complaint and the TRO on March 19, 2008.

Signed by:    _Sanjeev_

SANJEEV MALHOTRA

3484 Augusta Drive

IJAMSVILLE, MD. 21754-9027